Mr. Justice CLIFFORD,
 

 having stated the. ease, delivered the opinion of the court.
 

 Authority to tax the plaintiffs in this case, if it existed at
 
 *629
 
 all, was derived from that clause of the Internal Revenue Act which provides to the effect that dividends declared by a railroad company, in scrip or money, due and payable tc their stockholders, as part of the earnings, profits, income, or gains of such company, and all profits of such company carried to the account of any fund or used for construction, are proper subjects of taxation, and that the company declaring such dividends in scrip or money shall pay a tax of 5 per centum on the amount of all such interest or coupons, dividends or profits, whenever and wherever aud to whatsoever party or person the same may be payable.
 

 Unless the authority to tax the plaintiffs was derived from that provision it is clear that it did not exist, and it is equally clear that it was not derived from that provision unless the certificates issued by the company to their stockholders are dividends of scrip within the meaning of the act levying the tax in controversy.
 

 Viewed in that light, as the question should be, it is evident that the first instruction given by the court to the jury is the exact equivalent of the second, as it is clear that if the certificates issued by the company to their stockholders are not dividends in scrip within 'the true intent and meaning of that provision, the taxation of the company was unauthorized by law, and the plaintiffs were, in view of the evidence, entitled to a verdict. These instructions, therefore, may be considered together, aud inasmuch as they involve the whole merits of the controversy they will be examined in advance of the exceptions to the ruling of the court.
 

 Sufficient appeared to obviate the necessity for any extended reply to the suggestions that the certificates were not issued by the plaintiffs, or that the assessment was made to one of the old companies, which for many purposes went out of existence when the consolidated company was formed. All of these imaginary difficulties, which were the subject of repeated reference at the argument, are forever silenced by the legislative act of the State under which the plaintiffs came into existence.
 

 By that act it is provided that the rights of all creditors
 
 *630
 
 of, aud of all liens upon, the property of the corporations, parties to the agreement and the act, shall be preserved unimpaired aud the respective corporations shall be deemed to continue in existence to preserve the same, and all debts and liabilities incurred by either of the corporations, except mortgages,
 
 shall thenceforth attach
 
 to such new corporation and be enforced against it and its property to the same extent as if such debts or liabilities had been incurred or contracted by such new company.
 
 *
 

 Apply that rule to the case and it follows that by virtue of that provision the new company formed by the act of consolidation assumed all the obligations of the old companies, except mortgages; or, in other words, that all debts and all liabilities, except mortgages, incurred by either of those companies attached to such new corporation and became enforceable against the same and their property to the same extent as if such debts or liabilities had been incurred or contracted by such new corporation.
 

 Attempt is made in argument to question the soundness of that proposition as applied to the case before the court, aud reference is made to the case of
 
 Prouty
 
 v.
 
 Railroad Company,
 

 †
 
 as promulgating a" rule of decision inconsistent with the theory that the new corporation became liable for the internal revenue tax in question, or that the tax became enforceable against such corporation or their property, but the court here is of the opinion that the case cited supports the proposition that the payment of the tax in question is one of the obligations which the new company assumed when the consolidation became complete, as the liability to such taxation, on the part of the old company, existed before the consolidation was formed, and that the liability to pay. the same attached to the new corporation and became enforceable against the same and their property to the same extent as if such liability had been incurred or contracted by such new corporation.
 

 
 *631
 
 Power was conferred by the legislative act to form the consolidation, subject to the condition that all debts and liabilities incurred by either company, except mortgages, should thenceforth attach to the new corporation and be enforceable against such new corporation and their property, and all the Court of Appeals decided in the case referred to, which is applicable to this case, is that the consolidated company in such a case becomes responsible for the debts and liabilities of the old companies only by virtue of the assumption of those obligations as part of the terms of the consolidation, which is sufficient to show that the theory of the plaintiffs cannot be sustained.
 

 Scrip dividends as well as dividends in money, it must be admitted, are proper objects of taxation under that section of the Internal Revenue Act, and the same section provides that a list or return shall be made and rendered to the assessor or assistant assessor, on or before the tenth day of the month following that in which the interest, coupons, or dividends become due and payable, and as often as every six months, which shall contain a true and faithful account of the amount of the tax, verified under oath by the president or treasurer of the company.
 

 Payment of the tax is required of the company, and for any default in making or rendering such list or return, or of the payment of the tax or any part thereof, the company making such default shall forfeit as a penalty the sum of one thousand dollars, and the assessment and collection of the tax and penalty, in case of such default, shall be made according to the pi’ovisions of law in other cases of neglect or refusal.
 

 Except where the stockholder is exempt from such an exaction the tax may properly be assessed against the company required to render the return, and it is the company which is to make the payment and which becomes liable to the penalty in case of default.
 
 *
 

 Liabilities of the kind do not attach to the company in
 
 *632
 
 cases where the stockholder is exempt by law from such an exaction, as the same section of the act provides that the company in such a case is authorized to deduct and withhold the amount of the tax from all payments on aceount.of such interest or coupons and dividends, which cannot have any application in a case where the stockholder is by law exempt from any such exaction.
 
 *
 

 Exemptions of the kind constitute an exception to the general rule, as the tax, in eases where no such exemption exists, may be assessed against the railroad company.
 
 †
 

 None of these propositions are controverted by the plaintiffs, but they insist that the amount which they paid for the tax in this case should be refunded for the following reasons: (1.) Because, as they insist, the scrip in question is not a dividend in scrip within the meaning of the Internal Revenue Act. (2.) Because the assessment was illegal and void even if the scrip is a proper subject of taxation and the assessment is made against the proper party. ■ (3.) Because the railroad company assessed ceased to exist, and became extinct before the assessment was made. (4.) Because the distraint was illegal, inasmuch as the goods of one party were seized to pay a tax assessed against another party.
 

 1. For years the old company had earned moneys greatly jn excess of their current expenses without any satisfactory scheme being suggested to render such accumulating surplus available to their stockholders, as they were not authorized to increase their capital stock and were forbidden by law to make dividends for the benefit of the stockholders beyond ten per cent. Difficulties of the kind existing, the excess of earnings beyond current expenses had been expended in constructing and equipping their railroad and in the purchase of real estate and other properties with a view to the increase of their traffic.
 

 Accumulations of the kind had been appropriated in that
 
 *633
 
 way until the same amounted in the aggregate to a sum equal to eighty per cent, of the capital stock of the company. Dissatisfaction arose among the stockholders, and all admitted that they were entitled to evidence that the excess of the earnings of the company beyond the current expenses had been appropriated in that way, and to reimbursement of the same at some convenient future period.
 

 Motives, such as those recited, induced the company to grant the certificates, and they were accordingly issued to the stockholders, severally declaring on their face that such stockholder is entitled to eighty per cent, of the amount of the capital stock held by him, payable ratably with the other certificates issued under the same resolution, at the option of the company, out of their future earnings, with dividends thereon at the same rates and times as dividends shall be paid on the shares of the capital stock of the company
 
 •,
 
 or they may be, at the option of the company, converted into stock whenever the company shall be authorized to increase their capital stock to an amount sufficient for such conversion.
 

 Interest certificates of the kind were issued as evidence to the stockholders that an equal amount of the earnings of the company beyond current expenses had been expended for the objects stated in the preamble of the certificates, and to show that the respective stockholders were entitled to reimbursement of such expenditure at some convenient future period, and also to show that the stockholders were entitled to dividends on the same whenever dividends were paid on the shares of the
 
 capital stock,
 
 and that the certificates were to be paid out of the future earnings of the company, or to be converted, at the option of the company, into stock, if thereafter authorized to exercise that option.
 

 Such a paper, therefore, by whatever name it may be called, is, upon its face, evidence for each stockholder, to persons with whom he may have dealings, of the amount of the previous net earnings’ of the company; that such net earnings, to the amount specified, have been expended in constructing and equipping the railroad and in the purchase
 
 *634
 
 of real estate and other properties appertaining to the same, and that the holders of the certificates will be entitled to dividends whenever dividends are paid upon the capital stock.
 

 By the terms of the paper it is stated that it may be transferred, on the books of the company, and. the form of the transfer is appended to the same, which also shows that the transferee, like the original holder, will be entitled to be reimbursed for the amount of the expenditure therein certified at some convenient future period, unless the company should elect to convert the same into the stock of the company instead of paying the same ratably out of their future earnings.
 

 Stockholders to whom such .certificates were issued, it is insisted by the plaintiffs, acquired no.rights whatever by virtue of the instruments beyond what they had before, except the right to accruing dividends, but it is clear that the proposition is founded in mistake, as the certificates possessed every quality of stock except that they conferred no power to vote and may be redeemed by payment out of the future earnings of the company. Like stock certificates they are made conveniently transferable, as they may be transferred upon the books of the company, and possess an equal value with stock when used as collateral security or as the basis of credit in any moneyed transaction.
 

 Money dividends could not lawfully be made to exceed ten per cent., and inasmuch as the law of the State forbade the company to increase their capital stock they devised the scheme of issuing these certificates to their stockholders as evidence that such expenditure of the Det earnings of the company had been made, in the manner stated, and that the stockholders were entitled to reimbursement of the same at some convenient future period; and in order that the certificates might approximate as near as possible to stock, without exposing the company to the hazard of an actual addition to the same, in violation of law, they provided that the holders of the certificates should be entitled'to dividends whenever dividends were paid by the company on the shares
 
 *635
 
 of the capital stock, and that the certificates themselves should either be paid ratably out of the future earnings of the company, or be converted into stock at the option of the company.
 

 Bond fide
 
 holders of the certificates might demand that the certificates should be paid out of the future earnings of the company, or that they should be converted into stock whenever the company should be authorized to increase their capital to an amount sufficient for the purpose, and that they should have a pro rata share in the distribution of whatever assets may remain at the dissolution of the company.
 

 Stock dividends it is conceded are a proper object of taxation under the Internal Revenue Act, and if so, it is difficult to see why those certificates are not, as they differ from the former only in the fact that they do not confer the right to vote and that they may be cancelled by payment out of the future earnings of the company.
 

 No attempt is made in argument to show that the fact that the company has reserved the right to pay the certificates out of their future earnings exempts them from liability to taxation under that act, and it is clear that the fact that they do not confer the right to vote cannot have any such effect, as dividends in stock do not necessarily entitle the holder to any additional vote. Whether they do so or not depends in any particular ease upon the terms of the certificate and the charter of the company.
 
 *
 

 Usually a stockholder is a member of the company and as such has a right to vote, but it does not necessarily follow that the right increases with the increase of stock, or that the right is lessened in case the number of shares owned by the stockholder should be diminished.
 

 Net earnings of such a company may be expended or invested in constructing or equipping the railroad, or in the purchase of real estate or other properties, but the investment, whatever it may be, belongs to the stockholders, and
 
 *636
 
 may be distributed, as they may direct, in dividends of stock or of scrip or of money, payable out of the future earnings of the company, or by a sale of property not necessary to effect the purposes for which the company was created.
 

 Deductions such as are authorized by the second clause of the section imposing the tax in this case cannot be made in the case of a dividend of stock any more than in the ease of a dividend in scrip, which of itself is a complete answer to the proposition that the certificates are not the proper objects of taxation because they cannot be subjected to such deduction, it being conceded that certificates of stock are the proper objects of such taxation.
 

 Corporation bonds are the representatives of money, because they are issued for sale in negotiable form, but certificates of stock are not securities for money, nor are they negotiable instruments in the strict commercial sense. Like dividends in scrip they are simply muniments of and evidence of the holder’s title to a described share or interest in the property and franchises of the corporation, and the dividend in scrip evidences the same extent of interest in such property and franchise as the dividend of stock, except that it is the right of the company to pay the same out of their future earnings, and that the dividend in scrip confers no right to vote.
 
 *
 

 Much discussion to show that a dividend in scrip declared by a railroad as part of their earnings, profits, income, or gains is the proper subject of taxation by virtue of the Internal Revenue Act is scarcely necessary, as the express words of the act are that such a dividend “ shall be subject to and pay a tax of five per centum whenever and wherever and to whatsoever party or person the same may be payable.”
 
 †
 

 Taken in a general sense the stock of an incorporated company may be defined to mean the capital of the company in the form of transferable shares of a specified amount, but the word is frequently employed in a much more re
 
 *637
 
 stricted sense. Stock, when it means anything else than the capital of a corporation, usually refers to the interests of the respective shareholders, and the aggregate of those interests may with propriety in many cases be denominated the stock of the corporation.
 
 *
 

 Unless otherwise provided by the charter or by-laws of a corporation the profits aud surplus funds of a corporation, whenever they have accrued, are, until separated from the capital by the declaring of a dividend, a part of the stock itself and will pass with the stock under this name in a transfer or bequest.
 
 †
 

 Purchasers of stock have a right to claim and receive all dividends subsequently declared, no matter when the fund appropriated for the purpose was earned, whether before or after the transfer and delivery of the certificates constituting the evidence of ownership.
 
 ‡
 

 As a general rule stock dividends, even when they represent net earnings, become at once a part of the capital of the company, and, of course, entitle the holder to vote, unless it is otherwise provided in the charter or by-laws. Such a dividend, if earned aud declared, necessarily increases the value of the old stock if new stock is not issued, aud in that mode reaches substantially the same result.
 
 §
 

 By the terms of the act a dividend in scrip declared by such a company as a part of its earnings, &c., is subject to the described tax whenever or wherever or to whatsoever party or person the same shall be payable. What is required to be due is the scrip and not the fund, money, or proceeds which it represents. Beyond doubt such scrip becomes operative aud due within the meaning of the Revenue Act when it is unconditionally declared without containing any provision postponing its effect.
 

 These certificates are uot dividends in money, nor are they
 
 *638
 
 stock or certificates of stock in the strict sense, but they are exactly what they are described to be in the Revenue Act, to wit, dividends in scrip, which entitles the holder to just what he is promised in the instrument, or, in other words, his right must be determined by the contract under which alone he can claim, and that contract is found in the scrip .issued by the company.
 
 *
 

 Funds set apart as capitál out of which debts are to be paid, it is held, amounts to a contract with those who become creditors on the faith of the transaction that the fund shall not be withdrawn and appropriated to the use of the owner or owners of the capital stock, and the court is of the opinion that the vote of the company issuing these certificates is a valid contract of the company with the holders of the certificates that the same shall be paid, at some convenient period, out of the future earnings of the company, unless the company, when thereto authorized, elect to convert the same into capital stock.
 
 †
 

 Tested by these considerations it is quite clear that the first instruction given by the court to the jury is erroneous.
 

 2. Suppose that is so, still it is insisted by the plaintiffs that the judgment should be affirmed even if the scrip is the proper subject of taxation, because the assessment, though made against the proper party, is in other- respects illegal and void.
 

 Mere irregularities may be passed over without .remark, as the suit is an action of assumpsit brought'by the plaintiffs to recover back money which they paid to the collector, and the burden is upou them to show that the defendant
 
 ex equo. et bono
 
 is bound to refund the amount which they paid.
 
 ‡
 

 Indebitatus assumpsit
 
 is founded upon what the law terms an implied promise on the part of the defendant to pay what in good conscience he is bound to pay to the plaintiff.
 
 *639
 
 Where the case shows that it is the dut}' of the defendant to pay, the law imputes a promise to fulfil that obligation, but the law never implies a promise to pay unless some duty creates such an obligation, and more especially it never implies a promise to do an act contrary to duty or contrary to law.
 
 *
 

 Throughout the argument for the plaintiffs it is admitted that they never complied with the requirement which made it their duty to make and render a li>st or return to the assessor or assistant assessor of the interest, coupons, or dividends described in the Internal Revenue Act as the proper objects of taxation.
 

 Complaint is made that the assessor did not pursue the directions of the fourteenth section of the Internal Revenue Act before he made the assessment in this case, but the powers there given the assessor were conferred for the benefit of the United States. Taxpayers, if they make the re¡quired return, will have no cause to complain that the assessor did not issue a summons to them or those representing such taxpayer to appear and give evidence upon the subject, or that the assessor did not enter the place where the taxpayer resides and make the examination of his books and papers as authorized by that section of the act. Doubtless he may do so if he deems it necessary, but the tax is not rendered illegal if the assessor omits to procure the necessary information in that way. Steps of the kind may be taken by the assessor or they may be omitted, but he is required to give a written notice to the taxpayer requiring him to render the described list or return within a specified time, and the record shows that the assessor did substantially comply with that requirement.
 

 Due notice of the assessment was also given, and the record shows that the plaintiffs appealed to the commissioner with a degree of success rarely ever surpassed, as it appears that they induced the commissioner to abate six
 
 *640
 
 hundred and ninety-two thousand and eighty dollars of the tax, or nine-fifteenths of the same, with the whole penalty, though the plaintiffs now suggest in argument that they, if liable at all, are liable for the whole amount. Whether or not they are liable for the whole amount is not a question in this case, but the court is very clearly of opinion that the instruction given by the Circuit Court to the jury that they should x-ender their verdict for the plaintiffs is erroneous, unless it shall appear that there is greater merit in the third and fourth objections to the assessment than is found in the first or the one under consideration.
 

 Irregularity in giving the notice óf the assessment is now certainly uuimportant, as it is required chiefly to enable the party assessed to appeal and claim a review of the action of the commissioner. Such an appeal having been granted and all rights under it fully exercised and enjoyed, it is now too late to object that the notice of the assessment was irregular.
 
 *
 

 3. Enough has already been remarked to show that there is no merit in the third objection to the assessment, as the act providing for the consolidation of the two companies enacts that the liabilities of the old company assessed in'this ease may be enforced against the new corporation and their property to the same extent as if such liabilities had been incurred or contracted by such new company.
 

 4. Nor is there any merit in the fourth objection to the assessment, as the complaint is the same in principle as that contained in the third, and is decided to be unfounded for the same reason.
 

 Most or all of these objections were sustained by the Circuit Court, and it was in view of their merit and influence that the presiding justice instructed the jury to render a verdict for the plaintiffs. Evidently that instruction is erroneous as well as the first instruction, and for these reasons the judgment must be reversed. Having come to that conclusion it is unnecessary to enter into any extended discus
 
 *641
 
 sion of the exception to the ruling of the court in excluding certain evidence offered by the defendant. Suffice it to say that the court here is of the opinion that the ruling is erroneous; that the evidence was properly admissible as explanatory of the surrounding circumstances.
 

 Judgment reversed with costs, and the cause remanded with directions to issue
 

 A NEW VENIRE.
 

 *
 

 2 Sessions Acts of New York, 1869, chapter 917, page 2102.
 

 †
 

 52 New York, 366.
 

 *
 

 Barnes
 
 v.
 
 The Railroads, 17 Wallace, 303.
 

 *
 

 United States
 
 v
 
 Railroad Company, 17 Wallace, 327.
 

 †
 

 Stockdale
 
 v.
 
 Insurance Company, 20 Id. 323.
 

 *
 

 Taylor
 
 v.
 
 Griswold, 2 Green (New Jersey), 226.
 

 *
 

 Bank
 
 v.
 
 Railroad, 13 New York,
 
 627;
 
 Bank
 
 v.
 
 Burr, 24 Maine, 264.
 

 †
 

 State
 
 v.
 
 Bank, 11 Ohio, 95.
 

 *
 

 People
 
 v.
 
 Commissioners, 23 New York, 220.
 

 †
 

 Iron Company
 
 v.
 
 Commonwealth, 55 Pennsylvania State, 451; Brundage
 
 v.
 
 Brundage, 1 Thompson & Cook, 90; Phelps
 
 v.
 
 Bank, 26 Connecticut, 269.
 

 ‡
 

 March
 
 v.
 
 Kailroad, 43 New Hampshire, 515.
 

 §
 

 Railroad
 
 v.
 
 Commonwealth, 100 Massachusetts, 404.
 

 *
 

 Brown
 
 v.
 
 Coal and Navigation Company, 49 Pennsylvania State, 273; People
 
 v.
 
 New York, 16 New York, 427.
 

 †
 

 Insurance Company
 
 v.
 
 Mayor, 4 Selden, 250; Same
 
 v.
 
 Supervisors, 4 Comstock, 445.
 

 ‡
 

 Swift
 
 v.
 
 Poughkeepsie, 37 New York, 512.
 

 *
 

 Curtis
 
 v.
 
 Fiedler, 2 Black, 478 ; Cary
 
 v,
 
 Curtis, 3 Howard, 236; Philadelphia
 
 v.
 
 Collector, 5 Wallace, 732 ; Elliott v. Swartwout, 10 Peters, 150; Bend
 
 v.
 
 Hoyt, 13 Id. 267
 

 *
 

 State
 
 v.
 
 Dulle,
 
 48
 
 Missouri, 287.