SMITH, APPELLANT, v. IRON MOUNTAIN TUNNEL CO., RESPONDENT.

(No. 3,164.)

[(Submitted June 15, 1912. Decided June 21, 1912.)

[125 Pac. 649.]

*Corporations—Stock—Change from Nonassessable to Assessable —Unit of Voting Power—"Stockholders"—Statutory Construction—When Unnecessary.*

Corporations—Stock—Change from Nonassessable to Assessable—Unit of Voting Power.
  1. *Held,* that in enacting section 3887, Revised Codes, to the effect that a corporation whose stock is nonassessable may change it into assessable stock, with the consent of three-fourths of its *stockholders,* the legislature intended to and did make the individual stockholder, and not the share of stock, the unit of voting power, and that therefore such a change made with the consent of only 96 (though owning more than three-fourths of the company's stock) out of 301 stockholders was without effect and an assessment levied in pursuance thereof void.

Statutory Construction—When Unnecessary.
  2. Where the language employed in a statute is plain and without ambiguity, it does not require judicial construction; in such a case courts must presume that the legislature intended what the words plainly say.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

ACTION by Edward G. Smith against the Iron Mountain Tunnel Company. Judgment for defendant and plaintiff appeals. Reversed and remanded.

*Mr. C. G. Colby,* and *Messrs. Maury, Templeman & Davies,* for Appellant, submitted a brief; *Mr. J. L. Templeman* argued the cause orally.

*Mr. Henry C. Stiff,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This cause was tried upon an agreed statement of facts. From a judgment in favor of defendant, plaintiff has appealed.

Omitting all unnecessary details, it appears that the defendant is a domestic private corporation, organized in 1905; that its capital stock was made nonassessable; that plaintiff became a stockholder; that thereafter, on January 24, 1911, an order was entered upon the records of the corporation reciting that on that day the stock of the corporation had been ordered changed from nonassessable to assessable stock, and proper certificates setting forth that fact were filed; that there were then 301 individuals owning stock in the corporation; that only 96 of such stockholders consented to the change, but that these 96 owned more than three-fourths of all the capital stock. This action was brought by a nonconsenting stockholder to enjoin the sale of his stock for delinquent assessments, and the single question presented for determination is: Does it require the consent of at least three-fourths of the whole number of stockholders, regardless of the number of shares owned by them, to change the stock from nonassessable to assessable stock, or is the consent of the owners of three-fourths of the shares of stock sufficient, even though these owners constitute less than three-fourths of the whole number of individuals holding stock in the corporation?

Section 3887, Revised Codes, provides: "Any corporation whose capital stock is not assessable may, with the consent of three-fourths of its stockholders, in writing, spread upon the records of such corporation, make its stock assessable under the provisions of this article." If this language be accepted literally, then clearly it requires the vote of three-fourths of the whole number of individuals owning stock, regardless of the number of shares owned by them, to effect the change. But counsel for respondent insists that the use of the term "stockholders," in the section above, is an inadvertence, and that the legislature meant that the consent of the owners of three-fourths of the capital stock is sufficient, even though those owners constitute less than three-fourths of the whole number of stockholders. This view was adopted by the trial court, and the question above is presented for our review. The argument in favor of the trial court's conclusion has its foundation in the history of the rise and growth of industrial corporations in England and America. It is insisted that the share of stock has come to be regarded as the unit of voting power, and that our legislature has recognized the rule in practically every instance where the subject was considered. However, it is conceded that these corporations are the creatures of statute, and that it is within the power of the legislature to adopt either the share of stock or the individual owning stock as the unit of voting power, unless restrained by the Constitution. The only constitutional provision upon the subject is found in section 4 of Article XV of our state Constitution, which establishes the share of stock as the unit of voting power in the election of trustees or directors of such corporations. Since this restriction is limited to a single purpose, the legislature is left free to establish either the share or the individual as the unit for any purpose other than the election of trustees or directors. Is there, then, any evidence that the use of the term "stockholders" in section 3887 is an inadvertence? We think not, and the history of the legislation furnishes ample evidence to support our conclusion.

The share of stock as the unit of voting power in the election of trustees or directors of industrial corporations was recognized

uniformly in all our territorial legislation upon the subject; but beginning with the Codified Statutes of 1871–72, and continuing down to the present day, we find that the legislature has not adopted either standard uniformly. Section 23, Chapter 18, General and Miscellaneous Laws, Codified Statutes above, provides that the consent of the owners of two-thirds of the stock is necessary to increase or diminish the capital stock; while section 43 of the same Chapter provides that the consent of two-thirds of the stockholders is necessary to disincorporate. The same provisions are found in the Revised Statutes of 1879, Division 5, Chapter 15, sections 266 and 286. In the Compiled Statutes of 1887, Division 5, Chapter 25, the same provisions also are found in sections 468 and 488; and the Act of March 5, 1883 (Laws 1883, p. 88, sec. 18), brought forward therein as section 513, for the first time makes provision for changing nonassessable stock to assessable stock. That section provides that the change may be made "by and with the unanimous consent of its stockholders." The next legislation which throws any light upon the subject under review is found in the Acts of the Third Legislative Assembly. The Act of March 2, 1893 (Laws 1893, p. 111), provides that to increase or diminish the capital stock the "vote of at least two-thirds of all the shares of stock shall be necessary." Another Act, approved the same day (Laws 1893, p. 93), provides that to alter, change, or amend the name of any existing corporation "a vote of a majority of the stockholders of such corporation duly assembled at any regular meeting or at any special meeting duly called for that purpose" shall be necessary. The Act approved March 7, 1893 (Laws 1893, p. 92), provides that to change nonassessable to assessable stock "the consent of the stockholders holding two-thirds of the stock" shall be necessary, but this Act refers only to corporations theretofore organized. By the adoption of the Codes of 1895 the legislature provided a more comprehensive scheme for the government and control of domestic industrial corporations than had been in vogue theretofore. Section 408 of the Civil Code defines stockholders: "The owners of shares in a corporation which has a capital stock are called stockholders. If a corporation has no capital stock, the corporators

and their successors are called members." Provision is made in the same Code for the adoption of by-laws (sec. 430) ; for the amendment of by-laws (sec. 433) ; for the removal of a director (sec. 439) ; for a change in the number of directors (sec. 450) ; for increasing or diminishing the capital stock (sec. 525) ; and for extending the term of corporate existence (sec. 562). In all of these provisions the share of stock is made the unit of voting power. But section 510 provides that the stock of such corporation may be changed from nonassessable to assessable stock "with the consent of three-fourths of its stockholders"; while section 560 provides for a dissolution of such corporation according to the provisions of the Code of Civil Procedure, which are contained in sections 2190–2196 of the Code of Civil Procedure. These sections provide for dissolution by the district court upon an application setting forth, among other things, that at a meeting called for that purpose the dissolution was ordered "by a two-thirds vote of all the stockholders." With slight modifications these several provisions were carried forward into the Revised Codes of 1907 and are the law upon the subject to-day. Section 408 above is now section 3822; section 510 is now section 3887; section 560 is now section 3905; while sections 2190–2196, Code of Civil Procedure, are found in the present Codes as sections 7323–7329.

It will thus be seen that our legislature has never adopted a [1] uniform standard for a voting unit, but has recognized the share or the individual stockholder as such unit in different instances. Indeed, the very same legislative assembly has recognized both units, as is evidenced by reference to the legislative Acts of 1893 above. Since the term "stockholder" was given a legislative definition in 1895, it must be presumed that since that date, whenever the term has been used in legislation, it was intended to be understood in the sense as defined by the legislature, and the respondent must assume the burden of showing that in the present instance a different meaning was intended.

From the review of the history of the legislation upon the subject above, the conclusion seems inevitable that in employing the term "stockholders," in section 3887, the legislature referred to

the individuals who are the owners of shares of stock, and not to the shares themselves, and that, when the legislature declared that the nonassessable stock of a corporation can be made assessable "with the consent of three-fourths of its stockholders," it meant just what it said. To declare that the use of the word "stockholders" is a mere inadvertence is to impeach the intelligence of the legislators. If an inadvertence in section 3887, the same rule would apply with equal force to the provisions of the Codified Statutes of 1871–72, the Revised Statutes of 1879, the Act of 1883, and the Codes of 1895, and we would be confronted with the anomaly that the same mistake or inadvertence has occurred repeatedly in our legislation for more than forty years. To adopt the construction urged by counsel for respondent would be a usurpation of legislative function, which this court cannot undertake. If there are incongruities in the law, the legislature must make the correction, and it is no argument in favor of the construction urged to say that the owners of three-fourths of the capital stock may circumvent the law by the familiar practice of "splitting" stock.

So far as the provisions of section 3887 are concerned, they are plain and unambiguous, and the province of this court in determining the meaning of the statute is manifest. The rule of statutory construction under these circumstances was announced in *Smith* v. *Williams,* 2 Mont. 195, as follows: "Statutes should be their own interpreter. Courts must look at the language used, and the whole of it, and derive therefrom the intention of the legislature. Where this intention is obvious, there is no room [2] for construction. When the language is plain, simple, direct, and without ambiguity, the Act construes itself, and courts must presume the legislature intended what it plainly says. It is only in the case of ambiguous, doubtful, and uncertain enactments that the rules and principles of interpretation can be brought into requisition. It is not allowable to interpret what has no need of interpretation." That rule has been adhered to uniformly from that date to the present time. (See *Osterholm* v. *Boston & Mont. etc. Co.,* 40 Mont. 508, 107 Pac. 499.)

Since in the present instance the change was ordered by only 96 of the 301 stockholders, the action was without effect, and the assessment levied upon appellant's stock cannot be enforced. The judgment is reversed and the cause is remanded, with direction that a decree be entered conformably with the prayer of plaintiff's complaint.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied September 10, 1912.