T. R. MILLER MILL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 82625, 82879.   Promulgated January 11, 1938.

44

W. W. *Spalding*, *Esq.*, for the petitioner.

*DeWitt M. Evans*, *Esq.*, and *J. M. Morawski*, *Esq.*, for the respondent.

OPINION.

BLACK: As has already been pointed out, there is only one issue in these proceedings and that is whether $30,000 paid by petitioner to trustees for the benefit of its stockholders in each of the taxable years represents interest paid on its indebtedness.

The facts have been set out fully above and need not be repeated in this opinion. Respondent contends that the payments were not interest, but constituted dividends under article 621 of Regulations 77, applicable to these proceedings.

If petitioner is entitled to the deductions claimed, it is by reason of section 23 (b) of the Revenue Act of 1932, which reads in part as follows:

> In computing net income there shall be allowed as deductions:
>
> &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;
>
> (b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, &ast; &ast; &ast;

Article 621 of Regulations 77, which respondent relies upon in his determination that the payments in question were dividends and not interest, reads in part as follows:

> ART. 621. *Dividends.*—The term "dividends" for the purpose of Title I (except when used in sections 203 (a) (4) and 208 (c) (1)) comprises any distribution in the ordinary course of business, even though extraordinary in amount, made by a domestic or foreign corporation to its shareholders out of its earnings or profits accumulated since February 28, 1913.
>
> &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;
>
> &ast; &ast; &ast; A taxable distribution made by a corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands.

It seems clear from the evidence in this case that at the time of the corporate resolution of May 26, 1927, the corporation did not, despite the language used in the resolution, intend to presently distribute, in money or other property, $500,000 of its surplus to its stockholders. The corporation was a closed one, all of its stock being owned and held by the members of a few families, and it had been agreed upon that instead of actually distributing $500,000 in money or other property to the stockholders, the corporation would execute its promissory note for that amount, payable to designated trustees for the benefit of stockholders, the note to be due one year from date and to draw interest from date at the rate of 6 percent per annum. Does this arrangement make the distribution provided for in the resolution any less a dividend? We think not.

The declaration of a dividend creates the relationship of debtor and creditor between a corporation and its stockholders. *Southport Mill, Ltd.*, 6 B. T. A. 1073; affd., 26 Fed. (2d) 17. Though a dividend is payable upon a day not yet appointed, or at such time as in the opinion of the directors the corporation's finances justify such payment, nevertheless the debtor-creditor relation arises upon the date of declaration. *Wallin* v. *Johnson City Lumber & Manufacturing Co.*, 136 Tenn. 124; 188 S. W. 577; and *Northwestern Marble & Tile Co.* v. *Carlson*, 116 Minn. 438; 133 N. W. 1014.

We are not concerned here with the question as to whether or not the dividend distribution was a taxable one. The resolution declared that the distribution was to be out of surplus accumulated prior to March 1, 1913. Whether or not that was done in such a manner as to make the dividend nontaxable to the stockholders we do not in any manner decide. What we do decide is that the resolution of May 26, 1927, called for a dividend distribution and its effect was not changed by payment in the form of a promissory note, payable to trustees selected by the stockholders, drawing interest from date, instead of payment being made in cash or other property.

We see no essential difference in this method of payment from that which obtains when a corporation declares and pays a scrip dividend. Dividends paid in scrip have been ruled to be equivalent to a payment in cash and an investment of the cash in the scrip. See Paul and Mertens, vol. 1, sec. 8.68. Scrip dividends were held taxable under the Act of June 30, 1864, *Bailey* v. *New York Central & Hudson Railroad Co.*, 89 U. S. 604. The regulations of the Treasury Department applicable to the present proceedings provide for the taxation of scrip dividends. Article 627 of Regulations 77 provides, among other things: "Scrip dividends are subject to tax in the year in which the warrants are issued." What is a scrip dividend? Fletcher's Cyclopedia Corporations, vol. II, sec. 5357, defines a scrip dividend as follows:

* * * Scrip is simply a writing or certificate issued to shareholders in lieu of a dividend, entitling them to money, stock, bonds, land, or other benefit at some future time—"an interim or provisional document or certificate, to be exchanged, when certain payments have been made or conditions complied with, for a more formal certificate, as of shares or bonds, or entitling the holder to the payment of interest, a dividend, or the like." "A scrip dividend is resorted to where the company has profits not in cash."

The issuing of a bond or scrip dividend by a corporation to represent an investment of bona fide profits is not prohibited by a statute requiring dividends to be made only from surplus profits of the corporation, and providing that it shall not be lawful for corporations to divide or pay to stockholders any part of the capital, or to reduce the capital stock. Nor is such a dividend contrary to public policy. The rights of the holder of scrip depend upon the terms of his contract as therein expressed. Such a dividend, when the obligation to pay is absolute, is a debt due absolutely to the stockholders, although payment is postponed to a future time.

To warrant the recovery of interest therein provided for, it must be shown that the dividend was legally declared.

Although the note for $500,000 payable to trustees which was executed in payment of the dividend declared pursuant to the resolution of May 26, 1927, was made payable one year from date, the evidence shows that it was not intended to pay the note on the date due. We do not think that fact however renders the note any the less a legal obligation of the corporation. The note on its face represents an un-

conditional promise to pay and the fact that the stockholders and the corporation were willing to agree upon a longer term of payment than the note itself provided, we do not think changes the character of the obligation and makes it any the less the legal indebtedness of the corporation.

Ed. Leigh McMillan, who was one of the witnesses for petitioner in these proceedings and was its secretary, was asked the following question by petitioner's counsel: "Mr. McMillan, Mr. Neal has just been asked whether it was ever intended to pay this note or not. What is the fact on that question?" McMillan's answer was: "The note was to be paid. The note was an obligation of the company as much as any obligation, and just how it was to be paid and when, I could not say that, but it was an obligation of the company and it was to be paid at some time."

If we had the stockholders before us in these proceedings on the question as to whether the dividend distribution was taxable in 1927 (leaving aside the question that the distribution was made out of earnings accumulated prior to March 1, 1913), we do not think it would avail them anything as a defense to say that the note, although unconditional in its obligation to pay, was not to be paid on the date stated therein. The fact that the note bore interest from date and interest thereon was actually paid and extensions of time were apparently made by mutual consent between the corporation and its stockholders, would render unimportant, we think, the factor of time extensions in payment.

We think the facts of the instant proceedings serve to distinguish them from the holdings in *United States* v. *Mellon*, 281 Fed. 645, and *United States* v. *Davidson*, 9 Fed. (2d) 1022. In these cases the question at issue was whether a cash dividend had been declared and paid, as the Government contended, or whether the transactions as a whole showed the declaration and payment of stock dividends. The decision of the court was that, as to the taxpayers involved before it, the transactions amounted to the payment of a stock dividend and were not taxable.

We have in these proceedings no question of the declaration and payment of a stock dividend. Our question here is raised by the Commissioner's contention that, under the circumstances related in our findings of fact, no dividend at all was declared and no distribution of surplus was made or intended to be made, and therefore the promissory note of $500,000 did not represent legal indebtedness of the corporation. On this issue we hold against the Commissioner. A contrary view was expressed by the presiding member at the conclusion of the hearing, but this view has been changed upon review by the full Board.

As we have already pointed out, we see no distinction in principle between the form of payment in the instant case and the ordinary scrip dividend, and the Treasury's own regulations provide for the taxation of scrip dividends and for the allowance to the corporation of interest paid thereon.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

LEECH, dissenting: The necessary premise of the majority opinion is that petitioner paid dividends to its stockholders in the amount of the corporate note. The argument to sustain that position is that the note was similar to "scrip", that a corporate debt was thus created and the contested interest paid thereon was therefore deductible.

The fallacy in that argument seems to me to be that such note was not similar to "scrip." It was drawn to trustees. The petitioner, not the stockholders, was the real beneficiary of the trust. The only interest the stockholders received in the proceeds of the note was the right to a proportionate distribution of any such proceeds which were *"not in the judgment of said trustees needed by the said T. R. Miller Mill Co., Inc."* (Emphasis supplied.) And such rights as the stockholders had in the notes could be wiped out at any time at the discretion of the trustees since they had the "right, power and authority to mortgage, transfer, assign and hypothecate, for the use and benefit of T. R. Miller Mill Co., Inc., the said distribution of Five Hundred Thousand Dollars ($500,000.00), or any part thereof; or to transfer, assign or hypothecate the note or notes securing or evidencing such distribution * * *."

Even had this so-called distribution of $500,000 been made *in cash* to such a trust, could it be reasonably held that the petitioner thus actually paid or the stockholders really received anything?

In such circumstances, I think no dividend was paid, no corporate debt existed, and no interest thereon is therefore deductible.