**SHAWMUT ASS'N v. SECURITIES AND EXCHANGE COMMISSION et al.**

No. 4019.

Circuit Court of Appeals, First Circuit.

Jan. 15, 1945.

Robert G. Dodge and Harold S. Davis, both of Boston, Mass., for petitioner.

Louis Loss, Counsel, Trading and Exchange Division, SEC, Roger S. Foster, Sol., and Alexander E. Lipkin, Atty., SEC, all of Philadelphia, Pa., for respondent Securities and Exchange Commission.

Edmund J. Brandon and Henry M. Leen, both of Boston, Mass., for respondent Boston Stock Exchange.

Robert H. Davison, of Boston, Mass., and Stephen C. Thayer and Joseph C. Hostetler, both of Cleveland, Ohio (Haussermann, Davison & Shattuck, of Boston, Mass., and Baker, Hostetler & Patterson, of Cleveland, Ohio, of counsel), for National Association of Securities Dealers, Inc., amicus curiae.

Before MAHONEY and WOODBURY, Circuit Judges, and WYZANSKI, District Judge.

WYZANSKI, District Judge.

This case arises upon the petition of Shawmut Association for review of an order entered May 12, 1944, by the Securities and Exchange Commission upon the petitioner's application made July 3, 1943, for withdrawal of its shares from listing on the Boston Stock Exchange. Jurisdiction of this court rests upon Section 25

(a) of the Securities Exchange Act of 1934. U.S.C.A. Tit. 15, § 78y (a). Both the application by the petitioner to the Commission and the order entered by the Commission purport to be made pursuant to Section 12 (d) of the Act, U.S.C.A. Tit. 15, § 78*l* (d), the material portion of which reads as follows: " * * * A security registered with a national securities exchange may be withdrawn or stricken from listing and registration in accordance with the rules of the exchange and, upon such terms as the Commission may deem necessary to impose for the protection of investors, upon application by the issuer or the exchange to the Commission; whereupon the issuer shall be relieved from further compliance with the provisions of this section and section 13 of this title and any rules or regulations under such sections as to the securities so withdrawn or stricken."

In its application of July 3, 1943, to the Commission the petitioner stated that its trustees believed delisting would improve the marketability of the shares and lessen the discrepancy between their asset value and their quoted market value. July 20, 1943, in compliance with the Commission's Rule X-12D2-1 (b) (2), the petitioner sent notice of its application to all its known shareholders. Counsel for the Commission and counsel for the Boston Stock Exchange entered appearances. The Commission referred the case to a trial examiner, before whom the parties offered evidence, and a shareholder, John Richardson, made a statement. There was no significant conflict of testimony.

These facts appeared from the evidence and are in accord with the facts found by the trial examiner and later by the Commission. Petitioner is a so-called closed-end investment trust, that is, one which does not stand ready to redeem its outstanding shares. See Section 5 (a) of the Investment Company Act of 1940, U.S.C.A. Tit. 15, § 80a—5 (a). It is a trust created under the common law of Massachusetts by a declaration of trust, dated May 21, 1918. It is what is called a strict trust, with all powers of management vested in the trustees, free from any control by the shareholders, who occupy the position merely of beneficiaries of the trust; the only limitation upon the full power of the trustees is the requirement of consent, if consent is required, to any issue of preferred shares by the holders of preferred shares previously issued, and the require-

ment that amendments of the declaration of trust, which only the trustees can initiate, must be assented to by vote of the holders of a majority of the shares given at a meeting called for the purpose. 390,-000 of the petitioner's shares are outstanding, owned by more than 4,000 shareholders scattered in foitty states, the District of Columbia, and in foreign countries, although a slight majority are owned in Massachusetts. Two of the trustees own, respectively, 2,300 and 300 shares. Petitioner's shares were listed on the Boston Stock Exchange in 1928 and became effectively registered on October 2, 1935 under the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq. During the six months ending June 30, 1943, 7,285 shares were transferred on the Boston Stock Exchange and 27,703 shares were sold on the over-the-counter market. The Boston Stock Exchange has no rule or regulation pertaining to withdrawal of securities by an issuer; but it has a custom requiring notice, and petitioner has given notice pursuant to that custom. Approximately one-quarter of petitioner's assets consist of securities representing control of seven banks in the area suburban to Boston. Being a holding company affiliate under the Banking Act of 1933, 48 Stat. 162, petitioner is subject to examination by the Comptroller of the Currency and the Federal Reserve Board, and is, by virtue of Section 3 (c) (4) of the Investment Company Act of 1940, U.S.C.A. Tit. 15, § 80a—3 (c) (4), exempt from registration with the Commission. The trustees of petitioner have always been executive officers, directors or employees of the National Shawmut Bank of Boston. The declaration of trust specified that the trust was intended to result in "benefits to the * * * Bank * * * and its stockholders, as well as to the holders of certificates of beneficial interest represented by shares" of the trust. The Bank, although not itself a shareholder in the trust, is entitled to receive one-eighth of the net earnings of the trust plus half of any sum set apart for the payment of dividends after payment of cash dividends of $2.50 per share. The Bank also has specified rights to the trust's assets in the event of liquidation.

In accordance with Rule XI of the Commission, the trial examiner filed advisory findings and concluded that the granting of the application would be detrimental to investors unless the Commission imposed

the requirement that the question of withdrawal be submitted to the shareholders. Both the petitioner and the Commission's counsel filed exceptions. Briefs were submitted to and oral argument was had before the Commission.

May 12, 1944, the Commission issued what it denominated "findings and opinion" and an order. The material portion of the order provided:

"Ordered that said application be and hereby is granted, provided, however, that withdrawal shall not become effective until ten days after the date when the applicant shall have filed with the Commission a certificate showing:

"1. That the applicant has submitted the proposal to withdraw to the holders of record of its outstanding shares for their consent through solicitations which comply with Section 14 of the Act and the rules and regulations thereunder, which solicitations shall set forth in full that part of the opinion herein headed 'Conclusions' and shall include a clear and complete summary of the facts set forth in the findings of the Commission in this proceeding; and

"2. That within 120 days from the date of our order herein, [later changed to '120 days from the entry of the final order of the Court upon the petition for review of said order of the Commission'] a majority of the holders of record of the applicant's outstanding stock, and the holders of record of a majority of the shares of such stock, have consented, either by vote (in person or by proxy) at a meeting, or in writing without a meeting, to the withdrawal of such stock from listing and registration."

The accompanying "findings and opinion" are not numbered paragraphs sharply differentiating facts, inferences, considerations of policy, and conclusions of law. But they conform to a style now not unfamiliar in administrative determinations. The document refers to the application, quotes from it at length, recites the attitude shown by shareholders who wrote letters to the Commission, summarizes the trial examiner's advisory report, explains the relationship between petitioner and the Bank and examines at length the reasons for withdrawal from listing. In this examination the Commission quotes extensively from a shareholder's letter and other material which together apparently in the Commission's view tend to cast doubt on

petitioner's position that there is a discrepancy between exchange quotations of petitioner's shares and the asset value of those shares. The Commission refers to its own staff's study comparing transaction prices on the Boston Stock Exchange and on the public over-the-counter market which apparently in the Commission's view tends to discount petitioner's claim that delisting would improve the market for the shares. The Commission calls attention to the fact that delisting would terminate petitioner's obligation to file periodic reports with the Commission and to make disclosure to the shareholders in the event of future solicitation of possible amendments to the trust. Finally, the Commission concludes that since "there are presented grave questions as to whether the proposed withdrawal of the trust shares from listing and registration would deprive the shareholders of substantial advantages without giving them or the trust itself compensatory benefits", it is "necessary for the protection of investors" to issue the order set out above and in controversy here.

In its petition to this court for review of that order of the Commission, Shawmut Association makes these points: (1) the Securities Exchange Act does not give the Commission power to deny a petition for delisting; (2) the fact that the Commission may disagree with the judgment of the management as to the advisability of delisting does not increase the Commission's power; (3) the fact that delisting will deprive the shareholders of such advantages as are incident to listing furnishes no basis for the imposition of terms; (4) the conditions which the Commission may impose under the statute are not conditions precedent to delisting but conditions to accompany it; (5) the Commission cannot prevent delisting by requiring the submission to shareholders of its argumentative opinion; and (6) the Commission in departing from its precedents has abused its discretion. As a friend of the court, the National Association of Securities Dealers, Inc., while taking no position on the issue whether the Commission has power to require shareholders' consent as a term or condition in granting an application to delist securities suggests that the Commission's order of May 12, 1944, providing for the circulation of a copy of its conclusions and a summary of the facts without also providing an adequate explanation of the exchange and over-the-counter markets

was not a proper or reasonable exercise of the Commission's power under the Act.

We are of opinion that there is no merit in the points raised by either the petitioner or by the amicus curiae (if the latter has standing to make them) and that the petition to set aside the order of the Commission should be denied.

In form the order under review grants the application for delisting, but requires that before it becomes effective the applicant shall submit to its shareholders parts of the Commission's findings and conclusions and the applicant also shall secure the consent of a majority of the shareholders and of the holders of a majority of the shares. Thus we have an order which does not purport to exercise power to deny an application for delisting. And the Commission in its opinion as well as in its argument before us makes no claim that it has the power entirely to deny such an application. This concession reduces the initial question to a narrow compass: that is, whether the grant of an application for delisting on condition (1) that the applicant circularize the Commission's findings and conclusions and (2) secure consent of specified percentages of shareholders comes within the power, given by Section 12 (d) of the Act, to make delisting effective "upon such terms as the Commission may deem necessary to impose for the protection of investors." In other words, are these two conditions "terms"?

■ The petitioner contends that the word "terms" includes nothing more than accompanying conditions, such as the particular date on which the delisting becomes effective. For this argument petitioner seeks its chief support in numerous prior actions of the Commission where that agency uniformly has allowed delisting without requiring that the applicant circulate Commission opinions, secure shareholders' consents or comply with similar conditions precedent.

That contention is unsound. The statute gives on its face no indication that it should be construed narrowly. It refers to "terms", a word of the broadest connotations. As pointed out in Oxford English Dictionary, Vol. XI, p. 201 III, "terms" ordinarily embraces all "limiting conditions", not merely some conditions such as accompanying conditions as distinguished from conditions precedent. This amplitude of construction is consistent with the underlying policy of a statute and a particular section which are expressly directed at "the protection of investors". Moreover, one of the particular terms here invoked, the requirement that shareholders consent, is the type of term which at one time the Senate specifically contemplated [see S. 3420, 73 d. Cong. 2d Sess., and S.Rep.No. 793, 73 d. Cong. 2d Sess. (1934) p. 19] and which was not expressly precluded by the more general language ultimately adopted by Congress. The fact that the Commission has never previously imposed the particular terms laid down in the order of May 12, 1944, is of no significance, particularly when it is borne in mind that so far as appears none of the cases heretofore considered by the Commissioner and cited by petitioner involved a Massachusetts common law trust in which the beneficiaries have no power to vote for trustees. The Commissioner never disclaimed its right to insist on such terms in an appropriate case. And even if it had done so it would have been of no consequence. Where the question is whether an administrative agency has the power to issue a prospective regulation or order without any retrospective aspect, the sole test is what power was given by the Constitution and by Congress; there is no doctrine of estoppel by prior disclaimer or prior disuse.

■ Having in general the power to impose upon the grant of delisting application the "term" that the shareholders must consent, the Commission is not precluded from exercising that power because the applicant is a Massachusetts common law trust the shareholders of which have no voting rights (except on the question of approving an amendment of the declaration of trust) and have no powers of control. The Commission's power to impose terms arises from a law of the United States. Under Article VI of the United States Constitution that law is supreme. And it is not material if the exercise of powers under that law gives to persons an authority which they are denied under local law. Compare NLRB v. Hearst Publications, 322 U.S. 111, 123, 64 S.Ct. 851; American Power & Light Co. v. S. E. C., 1 Cir., 141 F.2d 606, 623.

■ Nor is the Commission precluded from requiring the assents of a majority of individual shareholders as well as the holders of a majority of shares. The Commission has the option to select any reasonable method of determining what proportion of the shareholders and what method

of counting votes of shareholders best reflect the interest of investors. The method selected in this case cannot be regarded as unreasonable since it combines the old common law method by which stockholders voted per capita (see Bailey v. New York Central Railroad Company, 22 Wall. 604, 89 U.S. 604, 635, 22 L.Ed. 840; Smith v. Iron Mountain Tunnel Co., 46 Mont. 13, 125 P. 649, Ann.Cas.1914B, 551) with the more familiar modern statutory or charter method by which stockholders vote according to interest. Moreover, this method gives an opportunity for effective expression of opinion by the smaller shareholder who because of his smaller resources may be thought to be specially concerned as to public reports and as to the choice of market for selling his stock.

██ The next point made by petitioner is that even if the Commission has the power to require shareholders' consent as a condition precedent to delisting it has no power to require preliminary submission to shareholders of a Commission opinion which, in petitioner's view, is tantamount to an argument addressed to the shareholders by the Commission suggesting that they should not give their consent. One answer to this point is that, even though we may not agree with it, the Commission's opinion appears to us to be a disinterested analysis, no more argumentative than comparable judicial opinions on economic issues. It is indeed an opinion similar in tenor to those reports which the Commission prepares under Sections 172 and 175 (3) of the Bankruptcy Act, U.S.C.A. Tit. 11, §§ 572 and 575 (3), and Section 11(g) of the Public Utility Holding Company Act of 1935, U.S.C.A. Tit. 15, § 79k (g). Moreover, the trustees are not bound to accept in silence the opinion which the Commission has prepared. As the Commission concedes at page 44 of its brief filed in this Court, "since Petitioner's trustees are entitled to their own opinion regardless of the Commission's views, they may properly add anything they like to the literature by which they solicit shareholders' consents to the delisting. They may also register their personal disagreement with the Commission's conclusions and attempt to persuade the shareholders to their point of view. Of course, any statements which the trustees may make must not themselves be false." Another answer to petitioner's point is that the Commission has wide discretion in the choice of what "terms" it shall impose for the protection of investors, and ordinarily a court should not undertake to substitute its judgment of what would be appropriate terms for the administrative judgment. Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217; American Power & Light Co. v. S. E.C., 1 Cir., 141 F.2d 606, 619. These two answers also meet the point raised by National Association of Securities Dealers, Inc. We do not sit to impose upon the Commission the views either of ourselves or of the Association as to the relative economic functions of stock exchanges and over-the-counter markets. So long as the Commission's economic opinion is not patently contrary to fact, or so heterodox as to appear capricious to reasonable men, we have no authority to set aside an order requiring an applicant to circulate that opinion to persons whose consent is made a requisite of delisting.

██ Finally, petitioner complains that it is an abuse of discretion for the Commission without warning to have treated it differently from other applicants for delisting such as the applicants involved in Fuller Manufacturing Company, SEC Release No. 3513, December 9, 1943, and American Box Board Company, SEC Release No. 3514, December 11, 1943. But it is obvious that in each case the administrative agency must decide what it regards as appropriate terms in the light of the testimony taken in connection with that particular application, the experience of the agency with other applications, and the underlying purposes of the statute involved. There is no doctrine which prevents, and there should be no surprise when there is, an equitable consideration of the special facts of each case or the progressive development of administrative practices. Flexibility was not the least of the objectives sought by Congress in selecting administrative rather than judicial determination of the problems of security regulation. Cf. Helvering v. Wilshire Oil Co., Inc., 308 U.S. 90, 101, 60 S.Ct. 18, 84 L.Ed. 101.[1] The administrator is expected to treat experience not as a

---

[1] Compare, Lord Greene, Master of the Rolls, Law and Progress. The Haldane Memorial Lecture, 1944, 94 Law Journal, p. 365 (Nov. 11, 1944): "I will start with the proposition that certain types of questions are not so suitable for decision by courts of law as by a different type of tribunal. A court of law must neces-

jailer but as a teacher. Furthermore, we cannot say that the SEC has arbitrarily selected a case in which to change its policy as to delisting. There are in the case at bar special facts (such as the relationship between the bank and petitioner, the method by which trustees of petitioner are selected, the lack of shareholders' control over trustees, the differing loyalties of the trustees, the characteristic exemption of a Massachusetts trust from local regulation, and the limited requirements of public disclosure to which the trust would be subject if the shares were delisted) which could properly be taken into account by the Commission. We ourselves might not regard such facts as enough to warrant a departure from precedent, but we are not the persons whose judgment on that issue has been made controlling by Congress.

The petition is denied.

sarily be guided by precedent * * * I would venture to state as a general proposition that questions which involve the conferring of rights, or the taking away of rights on the basis of what a tribunal thinks is reasonable on the facts of the individual case are not, in general, suitable for decision by a court of law * * * Rigidity of administration and reliance on precedent are not suitable features in dealing with such a matter. Wherever a full discretion is given, elasticity is essential."