PITTSBURGH TERMINAL COAL CORPORATION v. HEINER, Collector of Internal Revenue.

No. 2531.

District Court, W. D. Pennsylvania.

Jan. 26, 1932.

C. F. Taplin, of Cleveland, Ohio, and H. F. Baker, of Pittsburgh, Pa., for complainant.

Louis E. Graham, U. S. Atty., and John A. McCann, Sp. Asst. to U. S. Atty., both of Pittsburgh, Pa., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Allin H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

GIBSON, District Judge.

The complainant has filed its bill of complaint wherein it seeks an injunction against the collector of internal revenue by which he shall be enjoined from subjecting the property of complainant to distraint for the collection of taxes assessed against a corporation which has, since original assessment, been merged and consolidated with another corporation under the laws of Pennsylvania to form the complainant corporation.

The defendant has moved to dismiss the bill, alleging, in substance, that the court is without jurisdiction to enjoin the collector, that the complainant has an adequate remedy at law, and that the bill presents no facts which would entitle the complainant to equitable relief.

The facts set forth in the bill are as follows:

On the 28th day of April, 1902, letters patent were issued by the Governor of the commonwealth of Pennsylvania to Pittsburgh Terminal Railroad & Coal Company, a corporation chartered under the act of Assembly of Pennsylvania, approved April 29, 1874 (15 PS § 423).

In 1918, Pittsburgh Terminal Railroad & Coal Company filed its income and excess profits tax return for the taxable year 1917 and paid the taxes shown by such return to be due.

On the 30th day of December, 1922, the corporate name of Pittsburgh Terminal Railroad & Coal Company was changed to Pittsburgh Terminal Coal Company by certificate duly filed for that purpose with the secretary of the commonwealth of Pennsylvania.

On November 24, 1924, Pittsburgh Terminal Coal Company and Meadow Lands Coal Company, a Pennsylvania corporation, entered into an agreement of merger and consolidation for the purpose of forming one corporation to be known as "Pittsburgh Terminal Coal Corporation." This agreement was authorized by and consummated under an act of the General Assembly of the commonwealth of Pennsylvania entitled "An act authorizing the merger and consolidation of certain corporations," approved May 3, 1909, as amended by the Act of April 29, 1915 (15 PS § 423).

Pursuant to this agreement of merger and consolidation and on December 1, 1924, letters patent were issued by the Governor of Pennsylvania to the complainant, Pittsburgh Terminal Coal Corporation, and thereupon Pittsburgh Terminal Coal Company, formerly Pittsburgh Terminal Railroad & Coal Company, and Meadow Lands Coal Company were dissolved and ceased to exist.

On August 26, 1925, approximately ten months after Pittsburgh Terminal Railroad & Coal Company, by change of name Pittsburgh Terminal Coal Company, had been dissolved, the Commissioner of Internal Revenue, pursuant to the provisions of section 274 (a) of the Revenue Act of 1924 (26 USCA § 1048 note), mailed to "Pittsburgh Terminal Railroad & Coal Company" two sixty-day letters purporting to advise "Pittsburgh Terminal Railroad & Coal Company" of two deficiency assessments for the year 1917, one in the amount of $59,034.70 for the first three months of 1917, and the other in the amount of $228,923.63 for the last nine months of 1917. Similar letters were mailed by the Commissioner to other companies with which, in 1917, Pittsburgh Terminal Railroad & Coal Company was affiliated, with the result that on October 23, 1925, a petition was filed with the Board of Tax Appeals and given docket No. 8349, captioned "Appeal of The Pittsburgh & West Virginia Railway Company and affiliated

companies hereinafter mentioned, Wabash Building, Pittsburgh, Pennsylvania." The petition stated: "The above named taxpayer, the Pittsburgh & West Virginia Railway Company, its predecessor company, the Wabash Pittsburgh Terminal Railway Company and its affiliated companies, the Pittsburgh Terminal Coal Corporation (formerly Pittsburgh Terminal Coal Company and prior thereto Pittsburgh Terminal Railroad and Coal Company), West Side Belt Railroad Company, Mutual Supply Company, Pittsburgh Terminal Clay Manufacturing Company, and Pittsburgh Terminal Land Company, hereby appeal from the determination of the Commissioner of Internal Revenue set forth in his deficiency letters (Bureau Symbols IT:CR:RR:TJH-60D), dated August 26, 1925. \* \* \*"

On November 22, 1930, a motion was filed by Pittsburgh Terminal Coal Corporation with the Board of Tax Appeals in docket No. 8349 to dismiss the proceeding as to it upon the grounds that the appeal to the Board was taken by Pittsburgh Terminal Coal Corporation with respect to a deficiency notice addressed to Pittsburgh Terminal Railroad & Coal Company; that Pittsburgh Terminal Coal Corporation was an entirely different entity and corporation from Pittsburgh Terminal Railroad & Coal Company, by change of name Pittsburgh Terminal Coal Company, a dissolved corporation, and no notice of deficiency or proposed assessment was ever given to Pittsburgh Terminal Coal Corporation. On March 20, 1931, the Board of Tax Appeals promulgated its opinion upon such motion, holding and finding that Pittsburgh Terminal Coal Corporation was an entirely separate and distinct corporate entity from Pittsburgh Terminal Railroad & Coal Company, by change of name Pittsburgh Terminal Coal Company, and that Pittsburgh Terminal Coal Corporation, the complainant, was not the taxpayer, and had never received any notice of deficiency of tax or proposed assessment, and consequently had no right to appeal from the notice of deficiency and proposed assessment which the Commissioner, on August 26, 1925, mailed to Pittsburgh Terminal Railroad & Coal Company, a dissolved corporation. In accordance with such opinion, the Board of Tax Appeals, on March 23, 1931, entered its formal order dismissing, for lack of jurisdiction, the proceeding pending before it in so far as the Pittsburgh Terminal Coal Corporation was concerned, and on April 29, 1931, the Board of Tax Appeals denied the Commissioner's application for a rehearing.

The Commissioner, on May 18, 1931, made two assessments against "Pittsburgh Terminal Railroad & Coal Company, now merged into and existing as Pittsburgh Terminal Coal Corporation," for the same taxes which were involved in the proceeding before the Board of Tax Appeals, one of such assessments being in the sum of $77,548.95 for the first three months of 1917, and the other being in the amount of $300,717.84 for the last nine months of 1917, and the list containing such assessments was certified to the defendant collector and received by him on May 23, 1931.

On May 25, 1931, the defendant collector left with the complainant two notices and demands addressed to "Pittsburgh Terminal Railroad & Coal Company, now merged into and existing as Pittsburgh Terminal Coal Corporation," one being in the amount of $77,548.95 for the first three months of 1917, and the other being in the amount of $300,-717.84 for the last nine months of 1917.

On May 25, 1931, two notices of tax liens were filed by the defendant collector, one with the clerk of the United States District Court, Federal Building, Pittsburgh, Pa., and the other with the prothonotary of Allegheny county, Pittsburgh, Pa., such notices of tax liens being for taxes in the amount of $378,266.79 alleged to be due for the year 1917, and giving the name of the taxpayer as "Pittsburgh Terminal Railroad & Coal Company, now merged into and existing as Pittsburgh Terminal Coal Corporation." On June 5, 1931, the defendant collector mailed to the complainant two second notices and demands for the payment of the taxes aforesaid, which were addressed to "Pittsburgh Terminal Railroad & Coal Company, now merged into and existing as Pittsburgh Terminal Coal Corporation." On June 15, 1931, the defendant collector issued his warrants for distraint for the collection of taxes in the sum of $78,084.35 alleged to be due for the first three months of 1917, and in the sum of $302,794.03 alleged to be due for the last nine months of 1917, from "Pittsburgh Terminal Railroad & Coal Company, now merged into and existing as Pittsburgh Terminal Coal Corporation," and pursuant to such warrants for distraint the defendant collector levied upon all the property and rights to property of the complainant, including its bank accounts, and is threatening to proceed under such warrants for distraint to sell the property of the complainant so levied upon for the payment of the taxes aforesaid alleged to be due from Pittsburgh Terminal Railroad & Coal Company.

Thereupon, and on the 23d day of June, 1931, this proceeding was instituted to restrain the defendant collector from proceeding further with such warrants for distraint and to declare the levy and seizure of complainant's property made thereunder null and void.

The entire case of the complainant is based upon sections 274 (a) and 280 (a) of the Revenue Act of 1926 (26 USCA §§ 1048, 1069 (a). The first-named section provides that the Commissioner of Internal Revenue, if he determines that a deficiency in respect to tax exists, shall send the taxpayer notice of the deficiency by registered mail, and thereupon the taxpayer shall have sixty days within which to appeal to the Board of Tax Appeals for a redetermination of the deficiency, and in case of appeal no action shall be taken pending the decision of the Board. Section 280 (a) prescribes the same procedure in respect to the liability of a transferee· of property of a taxpayer as is provided in regard to the taxpayer. The complainant alleges that the Commissioner, in the assessment of the tax and the levy upon its property, has not obeyed the statute, in that he sent no sixty-day notice to complainant of the deficiency assessment for which he now proposes to hold complainant liable. It asserts that the notice sent to the Pittsburgh Terminal Railroad & Coal Company, one of two corporations whose merger resulted in complainant's corporate existence, was a notice sent to a nonexistent corporation, and was not the notice to complainant required by statute before the Commissioner could proceed to the collection of the tax claimed by him.

█ The objection raised by complainant to the procedure in the instant matter is quite technical, and we do not attribute to it the weight claimed by the complainant. The Pennsylvania merger statute to which complainant owes its corporate existence enacts that all debts not of record, duties, and liabilities of each of the merged corporations shall attach to the new corporation after merger, and may be enforced as if contracted by it. There is, in fact, no contention that complainant is not ultimately liable for the amount of the tax legally due from its constituent corporations. It received notice of the assessment of a deficiency tax for which it knew it was liable, accepted that notice as applying to it, and appealed to the Board of Tax Appeals, thus delaying the collection of the tax for five years. Having accepted the notice as its own, and having so acted pursuant to that acceptance, it may not now be allowed to deny notice for the sole reason that the communication of the assessment was directed to its constituent company. It will be noted that, while sections 274 (a) and 280 (a), supra, require notice of the determination of the tax, they do not prescribe any form in which it shall be given. When actually given by one party, and accepted and acted upon by the other, the notice was sufficient. To hold otherwise is to allow the technical an undue triumph over the substantial.

The contention of the complainant in respect to the alleged insufficiency of the notice because directed to one of the merged corporations has a parallel in one advanced by the complainant in Bailey v. Railroad Company, 89 U. S. 604, 22 L. Ed. 840. In that case it appeared that the New York Central Railroad Company and the Hudson River Railroad Company had been merged under a statute practically the same as the Pennsylvania act under which the merger in the instant case had been effected. After the consolidation, a tax was assessed against the New York Central Railroad. Later, a · warrant of distraint issued against "The New York Central Railroad Company, or The New York Central and Hudson River Railroad Company." The assessment against the New York Central Railroad was attacked as made against a nonexistent company, and also the warrant, but the Supreme Court sustained the procedure. If the assessment was sufficient in form to bind the new company in that case, it would seem to be even more certain that it sufficed in this one, in view of the recognition and long acceptance of the notice as binding by the complainant.

█ Complainant has further contended that the Commissioner's action in proceeding to collect the tax by distress was illegal, even though the Board of Tax Appeals, were in error in its dismissal of complainant's petition for review because. the notice of assessment had been directed to the constituent company rather than the existing company. It asserts that Congress has provided for the correction of error by the Board by giving the right of appeal to the Circuit Court of Appeals to each party injured by its decision, and that an adverse decision is binding unless reversed upon appeal. In the majority of cases before the Board this contention is correct. In the present case, it will be remembered, the dismissal of the appeal to the Board was not upon the motion of the Commissioner, but of complainant.

In view of this fact, it is very doubtful if any appeal could be successfully maintained. A taxpayer who disputes an assessment has two remedies: (1) He may pay the tax demanded and bring suit to recover that part wrongfully collected, or (2) he may, within sixty days after assessment, if aggrieved, have the assessment reviewed by the Board of Tax Appeals. The second alternative is a privilege conferred upon him by Congress. If he chooses to waive it, he may do so; and if, having undertaken to exercise his privilege, he later successfully seeks to withdraw his appeal to the Board, his withdrawal, it would seem, has the sole effect of limiting his remedies to payment and suit to recover. The appeal being out of the way, the status of the matter was left as when the review was sought, and the Commissioner was unaffected by the dismissal, being left with the same power as to collection as he had before the matter was taken to the Board. True, the Board expressed the opinion that the Commissioner had no right to make a deficiency assessment, or distrain to collect the amount of such assessment, by reason of the fact that no sixty-day notice had been given complainant by name. But appeals lie to the actions of courts, or similar bodies, not to the mere expression of their opinions. In the instant case the Commissioner was not aggrieved by the action of the Board, but only by its expression of opinion. While the Commissioner should, and doubtless does, duly respect the opinions of the Board, the authority of the Board in mere matters of law, unconnected with any judgment in regard to a tax liability, is not such as to require him to accept its opinions upon legal matters if such opinions are, after consideration, believed by him to be incorrect.

▇ In our opinion, the notice given by the Commissioner in the instant matter was a sufficient compliance with section 274 (a) of the Act of 1926 (26 USCA § 1048). But, even if we were to admit error in this respect, it still would seem that the complainant is in no position to appeal to a court of equity. By filing its petition for review it affirmed the sufficiency of the notice as to itself. It maintained that position for five years and thus delayed the Commissioner in the collection of the tax due for that period. Had it not filed its petition for review after the notice, or even had it asserted its mistake in filing it within a reasonable time after doing so, the complainant's bill, looking at it only from the standpoint of the equities involved, would have had considerably more weight than at present, but after accepting the notice as sufficient, and thus disarming the Commissioner, and then delaying for a period of five years before alleging the insufficiency of the notice, it plainly should be held to be estopped from assuming a new position and so obtaining further delay.

▇ In the foregoing we have endeavored to consider the merits of the bill of complaint. In view of section 3224, Rev. St. and section 604 of the Revenue Act of 1928, quoted below, such a consideration was seemingly a work of supererogation.

Rev. St., § 3224, USCA, title 26, § 154: "Section 3224. No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

Revenue Act of 1928, c. 852, 45 Stat. 791 (26 USCA § 2604): "Section 604. No suit shall be maintained in any court for the purpose of restraining the assessment or collection of (1) the amount of the liability, at law or in equity, of a transferee of property of a taxpayer in respect of any income, war-profits, excess-profits, or estate tax, or (2) the amount of the liability of a fiduciary under section 3467 of the Revised Statutes in respect of any such tax."

We do not undertake to review the cases wherein section 3224, Rev. St., has been considered by the courts. On its face, a rule without exceptions, a number of decisions may be cited which, on first reading, appear to limit its scope. Those cases, however, disclose exceptional circumstances. In each case, almost without exception, the court has based the injunction granted upon the ground that the collector was engaged in collecting a penalty, not a tax. In the present case the injunction is sought against him in his attempt to collect a tax, and where the complainant still has a remedy by suit to recover any tax wrongfully collected. Under such circumstances the statute controls us.

The bill of complaint must be dismissed.