WARNER COLLIERIES CO. v.
UNITED STATES.
No. 6088.

Circuit Court of Appeals, Sixth Circuit.
Jan. 20, 1933.

I. W. Sharp, of Cleveland, Ohio (Frank X. Cull and Bulkley, Hauxhurst, Inglis & Sharp, all of Cleveland, Ohio, on the brief), for appellant.

W. F. Evans, of Washington, D. C. (Wilfred J. Mahon and John B. Osmun, both of Cleveland, Ohio, and C. M. Charest, of Washington, D. C., on the brief), for the United States.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

So far as the matters involved are here material, this was a bill in equity to recover of the Wolf Run Coal Company, herein called the Wolf Company, and its transferee and obligee, the Warner Collieries Company, herein called the Warner Company, income and profits taxes in the sums of $5,414.50 and $13,069.96, with interest, for the years 1918 and 1919, respectively. The court dismissed the bill as to the Wolf Company and entered a decree against appellant, the Warner Company, for the amounts sued for.

The court made special findings of fact and conclusions of law in accordance with Equity Rule No. 70½ (28 USCA § 723). These findings of fact are not now controverted. So far as relevant, the findings of fact are: That the Wolf Company in due course filed its tax returns for 1918 and 1919; that these various returns were executed by its secretary, Whitworth, and its treasurer, Warner, both of whom were charged with attending to its tax matters; that on April 21, 1923, the Wolf Company, by Warner, who was then its vice president, executed powers of attorney to certain persons connected with a firm of public accountants, authorizing them to represent the company before the Treasury Department in business pertaining to its tax returns; that in October, 1919, the Wolf Company sold all its assets to the Warner Company for 7,500 shares of the stock of the Warner Company, which shares were of greater value than the amount of the taxes sued for; that as part consideration the Warner Company agreed to pay all the liabilities of the Wolf Company and to save it harmless against any and all claims, demands, and actions arising out of any of its obligations and liabilities.

On November 1, 1923, at a meeting of its board of directors, of which Warner was chairman and Whitworth, secretary, the Wolf Company was dissolved by a formal resolution, which declared that the company had completely closed its business and paid all its debts and liabilities. On November 16, 1923, the company, by Warner, its president, and Whitworth, its secretary, certified the dissolution to the secretary of state of Ohio. Upon the dissolution of the Wolf Company, its directors, by virtue of sections 8742 and 8743 of the General Code of Ohio, became trustees with power to settle the company's affairs.

On April 10, 1926, the Commissioner of Internal Revenue addressed to the Wolf Company a 60-day letter proposing an additional assessment of income and profits taxes of $7,103.73 for 1918, and on August 3, 1926, he forwarded a similar letter proposing an additional assessment of $18,286.14 for 1919. These letters never reached the former directors, trustees of the dissolved Wolf Company, as such; but the inference is clear that they were brought to the attention of Warner, a former director of the Wolf Company who was then vice president, and Whitworth, who was then secretary and treasurer of the Warner Company, and both of whom were at the time handling its tax affairs. Thereupon Whitworth, signing as secretary in the name of the Wolf Company, executed waivers, which, if valid, protected the Commissioner against the limitation for the assessment and collection of

the proposed deficiencies. These waivers, in order to comply with a requirement of the regulations of the Bureau, were executed under the seal of the long since dissolved Wolf Company.

On June 9, 1926, and October 1, 1926, petitions were filed with the Board of Tax Appeals in the name of the Wolf Company to redetermine the proposed deficiencies. These petitions were signed by Whitworth as secretary, and by an attorney connected with the accounting firm to which the before-mentioned power of attorney had been executed by the Wolf Company. Notwithstanding these waivers and petitions, executed in the name of the Wolf Company, the Department of Internal Revenue knew that this company had been dissolved in 1923. That information had been brought directly to the attention of the revenue collector at Cleveland, where the offices of the Wolf Company's successor, the Warner Company, were located; and yet with this information in hand, the Commissioner, instead of moving either to dismiss the petitions or to proceed against the trustees of the dissolved corporation, acquiesced in the procedure instituted before the Board. This no doubt seemed to all parties to be a practical way (Tyler v. U. S., 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758) of determining the proposed deficiencies against the Wolf Company for the payment of which, it was mutually understood, the Warner Company was liable under its contract. The proceedings before the Board were, in due course, closed by stipulation signed by counsel employed by virtue of the before-mentioned power of attorney. However, the fees of counsel were paid, eventually, by the Warner Company. In this stipulation it was agreed that the deficiencies for the years in question were for the amounts herein sued for, and orders of redetermination were accordingly entered and the taxes assessed against the Wolf Company. As a result, appellant, the transferee and obligee of the Wolf Company, was benefited in two particulars, i. e.: (1) It avoided a jeopardy assessment to which it would have been forced to respond; and (2) the originally proposed deficiencies were substantially reduced.

The points made in the District Court, and repeated here, are that the deficiency assessments were void because the Wolf Company had been dissolved long before the issuance of the 60-day letters; that these letters should have been addressed to the trustees of the company; that Whitworth and Warner were unauthorized to act for the dissolved corporation, and that the waivers were therefore invalid and inoperative; that the statute of limitations had barred the assessment and collection of the taxes; that the petitions before the Board of Tax Appeals executed by Whitworth and Warner in the name of the Wolf Company were unauthorized and void, and that the Board was therefore without jurisdiction over either the proposed deficiencies or the Wolf Company.

We are of the opinion that appellant is not in a position to raise these questions. It is obvious that the execution of the waivers by Whitworth and Warner and the proceedings before the Board of Tax Appeals were not intended for the protection of the dissolved Wolf Company. It is just as obvious that they were intended to and did benefit the Warner Company, which these officials then represented, and that the use of the corporate name and seal of the Wolf Company, acquiesced in by the Commissioner, was nominal only, and fully understood to be so by the Commissioner. Appellant cannot therefore now assume a contrary and inconsistent position at the expense of the government. See Magee v. U. S., 282 U. S. 432, 434, 51 S. Ct. 195, 75 L. Ed. 442; Independent I. & C. Storage Co. v. Commr., 50 F.(2d) 31, 33 (C. C. A. 5); Lucas v. Hunt, 45 F.(2d) 781, 782 (C. C. A. 5); Hartwell Mills v. Rose, 61 F.(2d) 441, 444 (C. C. A. 5); Pittsburgh Terminal Coal Corp'n v. Heiner, 56 F.(2d) 1072, 1076 (D. C.). Appellant was the real party in interest before the Board, and it should not in a court of equity be permitted to complain of irregularities after it had in the name of the Wolf Company received all the benefit that it was entitled to under its contract with the Wolf Company. See Bailey v. R. R. Co., 22 Wall. 604 (641) 22 L. Ed. 840; James v. Germania Iron Co., 107 F. 597, 617 (C. C. A. 8); Souffront v. La Compagnie des Sucreries, 217 U. S. 475, 487, 30 S. Ct. 608, 54 L. Ed. 846.

The decree of the District Court is affirmed.