## SHAMROCK OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7607.

Circuit Court of Appeals, Fifth Circuit.
May 14, 1935.

Rehearing Denied June 19, 1935.

John B. King, of Wichita Falls, Tex., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Arnold Raum and Sewall Key, Sp. Assts. to Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and Shelby S. Faulkner, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This petition to review a Board of Tax Appeals decision questions not the amount, but the existence of the tax liability found. The points made are based on the fact that while the tax accrued not against Shamrock Oil Company, petitioner, but against Shamrock Oil Company, its predecessor, waivers were obtained from, the deficiency letter was sent to, and all proceedings in connection with the determination and collection of the tax, including the proceedings before the Board, were had with petitioner. The points are the two made before the Board: (1) That the Board was without jurisdiction because the appeal had not been prosecuted by the taxpayer; (2) that the determination and collection of the deficiencies are barred by the statute of limitations, because the waivers on which the Commissioner relies were not signed by, or by the authority of, Shamrock Oil Company, the taxpayer; and (3) the additional one, that the facts do not make out a case for transferee liability. The facts and the proceedings are in all respects accurately and in most respects fully stated in the opinion of the Board. 29 B. T. A. 910. We shall abstract and supplement, but not restate, them. They show that in 1920 there were two joint-stock associations,[1] Shamrock Oil Company and Chapman-Clark-Harbin, trustees engaged in the oil business, which had been organized, and were owned and controlled by substantially the same interests. Shamrock Oil Com-

---

[1] On June 30, 1920, the same interests owned or controlled 92.7 per cent. of the outstanding capital stock of the Shamrock Oil Company, and 96.7 per cent. of the outstanding capital stock of Chapman-Clark-Harbin, trustees. On December 31, 1920, these percentages became respectively, 90.8 per cent. and 95.7 per cent. Of the eight members of the board of trustees of Chapman-Clark-Harbin, trustees, seven were on the board of trustees of the Shamrock Oil Company.

554

pany filed timely income tax returns for the years ending December 31, 1919, and December 31, 1920, but filed none for the subsequent years. In the fall of 1920 these associations, pursuant to negotiations looking to that end,[2] were consolidated. The form chosen to effect this consolidation was a turnover of all of the Shamrock Oil Company's properties to Chapman-Clark-Harbin in exchange for shares of stock in Chapman-Clark-Harbin, trustees, to be issued by that association to the stockholders of Shamrock, share for share. Thereafter, even to the extent of taking its name, the consolidation assumed to be, acted as, and was Shamrock Oil Company. So complete was this merger of the two joint-stock associations, so absolute the assumption by the successor consolidation of the assets, the liabilities, the identity, even to the name, of the Shamrock Company, that neither Mr. Dunaway, its president, nor the counsel employed in connection with this tax matter ever knew or supposed, until the 1931 change of front, anything other than that the consolidation continued to be and was, the Shamrock Oil Company.[3]

In 1925 petitioner sold its assets to the Prairie Oil Company and quit business, but Dunaway remained in Wichita Falls to wind up the affairs of the association. Continuing for more than seven years, beginning in 1924, proceedings were conducted with the Commissioner and before the

Board of Tax Appeals in complete recognition of the fact now sought to be denied, that Shamrock Oil Company, the petitioner, was, and continued after the consolidation to be, Shamrock Oil Company, the taxpayer, and that the tax liability asserted for the years in question was by reason of the consolidation the tax liability of the petitioner. In its petition to the Board for the redetermination of deficiencies filed January 22, 1927, a formal and lengthy one, all of the proceedings in connection with the organization of the two associations was set out and the claim was made that the two companies were so closely affiliated as to be entitled to make a consolidated return. Indeed, it was claimed that in 1919 and 1920 when the tax liability accrued, there was such a unity of operation of the two coupled with such ownership and control by the same interests of all of the stock of both associations as that the two were in effect one. Nothing was ever claimed to the contrary until in 1931, when this about face was made. Then it was that the claim was first tendered, that Shamrock Oil Company was not consolidated with Chapman-Clark-Harbin, but was sold out and dissolved, and that Shamrock Oil Company, the petitioner, was not a continuation of the taxpayer. In the long-drawn out proceedings and pleadings before the Board there was a claim to additional allowances for invested capital,

---

[2] On December 13, 1920, Shamrock Oil Company proposed to purchase the Chapman-Clark-Harbin properties. On December 14, 1920, Shamrock Oil Company addressed a communication to Chapman-Clark-Harbin, trustees, reading in part as follows: "I beg leave to advise that the directors of the Shamrock Oil Company have passed a resolution favoring the consolidation of its properties with your properties. * * * Without reference to the actual values of the properties, except their relative values that the two companies be combined upon the basis of their present setup values for the purpose of issuing certificates of fractional interests to the parties owning same. This to be accomplished in such manner as may suit your convenience, it being suggested that you take over all the properties, real and personal, cash and credits of every character whatsoever of the Shamrock Oil Co. * * *" On the same date Chapman-Clark-Harbin, trustees, directed this letter to the Shamrock Oil Company:

"Gentlemen: Your proposition of December 14, 1920 for consolidation of your

company with the Chapman-Clark-Harbin interests has this day been by resolution of the trustees, accepted and you will kindly take such steps as necessary looking to the legal consummation of the same and to that end we ask for a joint conference for the purpose of working out the details and form."

[3] In his testimony given after, in 1931, the point of difference between the two associations had been raised, Dunaway, who signed the waivers, conducted the negotiations, and authorized the proceedings taken by Shamrock Oil Company in connection with the tax, makes this clear. He testified that he did not know that "actually the Chapman-Clark-Harbin, Trustees, had purchased the Shamrock, and that the Shamrock Oil Company then existing had been dissolved"; that he thought Shamrock had bought Chapman-Clark-Harbin. "At that time I thought that the company I was representing was still the same Shamrock Oil Company, organized in March, 1918, a continuation of the company."

8555

but the main insistence was that the two concerns were affiliated, that the tax should have been figured on the basis of a consolidated return, and that since Chapman-Clark-Harbin had sustained net losses which Shamrock was entitled to take as deductions, the tax assessed was excessive. In January, 1929, there was an amendment to the petition setting up limitation, not on the ground of any want of authority on the part of Dunaway to sign waivers, but upon the ground that at the time the waivers were signed, the taxes had already become barred. In April, 1929, the petition was again amended to add certain claims for amortization, but still the main point made in this petition, as in the others, was that the two associations were affiliated most closely, in fact were identical, and should be so taxed. On February 18, 1931, by motion to dismiss for want of jurisdiction, it was for the first time claimed, that petitioner Shamrock Oil Company was not the taxpayer, and that all waivers had been signed and proceedings authorized and taken under the mistaken impression of petitioner's president, that it and the Shamrock Oil Company, which had incurred the tax, were one and the same. The Board was right in holding that the petitioner was for the purposes of the proceedings before it, the taxpayer, and that limitation had not run. We think, too, that there is no merit in the additional point the taxpayer seeks to make here, the point that petitioner is not liable as a transferee because the original Shamrock Oil Company was a partnership,[4] and since partners may be looked to for partnership debts, a transfer of all the partnership assets does not charge them in the hands of the transferee with a lien for partnership debts.[5]

These proceedings deal with federal taxes. As to federal taxes, Texas stock associations are not partnerships, they are corporations. Burke-Waggoner Ass'n v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183. They are liable as corporations for the taxes they incur. Whatever may be the rule in Texas as to the liability to general creditors, of the members of such associations, as partners, and whatever may be the rule there as to the effect upon general creditors of a transfer of all the assets,

we think it clear that as to tax liability, a transfer by a joint-stock association which strips it bare makes the taker liable as transferee for the federal taxes it owes. But the liability of petitioner here is not merely equitable, it is legal. It rests upon a contractual basis. We think it too clear for argument that whatever the form of the transaction by which the consolidation was effected, in fact and in law a consolidation resulted; a consolidation which, carrying forward into itself the assets and liabilities of the constituent associations, thereafter owned the assets and owed the debts of its constituents. Such a consolidation implies as one of its terms, an agreement to pay the debts of its constituents. Every action that its officers took until the change of front in 1931 testifies to the existence of this agreement, and to their intention to carry it out. After the consolidation, Shamrock Oil Company consolidated was to all intents and purposes, as to tax liabilities its constituents had incurred, the taxpayer. Shamrock Oil Company, the petitioner here, is and has been since the consolidation Shamrock Oil Company, the taxpayer, both because of the continuation in fact, if not in form, of the identity of the original association, and because in connection with and as a part of the consolidation an implied agreement arose that it would pay and discharge all debts. The government has and has had since the consolidation, the right to look to it for the taxes. All negotiations and agreements thereafter made with regard to the taxes were properly made with its officers. All proceedings taken with regard to the taxes were properly taken with it and with them. Commissioner of Internal Revenue v. Nichols & Cox Lumber Co. (C. C. A.) 65 F.(2d) 1009; North Am. Coal Corp. v. Com'r (C. C. A.) 63 F.(2d) 1011; Burnet v. San Joaquin, etc., Co. (C. C. A.) 52 F.(2d) 123; Pittsburgh Terminal Coal Corporation v. Heiner (D. C.) 56 F.(2d) 1072; Warner Collieries Co. v. U. S. (C. C. A.) 63 F.(2d) 34; Commissioner of Internal Revenue v. New York Trust Co. (C. C. A.) 54 F.(2d) 463; Trahern Pump Co. v. Com'r, 27 B. T. A. 363, affirmed (C. C. A.) 71 F.(2d) 584; and this wholly without reference to questions of estoppel or misleading. When

---

[4] Thompson v. Schmitt, 115 Tex. 53, 274 S. W. 554; Victor Refining Co. v. City National Bank of Commerce, 115 Tex. 71, 274 S. W. 561; Hollister v. McCamey, 115 Tex. 49, 274 S. W. 562; Howe v.

Keystone Pipe & Supply Co., 115 Tex. 158, 274 S. W. 563, 278 S. W. 177.

[5] Industrial Lumber Co. v. Texas Pine Land Ass'n (Tex. Civ. App.) 72 S. W. 875.

it is additionally shown, as here, that through a long course of years petitioner has been assuming to be, and acting upon that assumption the government has dealt with it as, the taxpayer, and that it commenced to claim otherwise only when, if it may now unsay what it has been saying, limitation has barred the claim, it is quite clear that it is now estopped to assume an inconsistent position. Philip Carey Mfg. Co. v. Dean (C. C. A.) 58 F.(2d) 737; Swartz v. Com'r (C. C. A.) 69 F.(2d) 633; Planters' Cotton Oil Co. v. Hopkins (C. C. A.) 53. F.(2d) 825; Walker v. Com'r (C. C. A.) 63 F.(2d) 346; Lucas v. Hunt (C. C. A.) 45 F.(2d) 781; Hartwell Mills v. Rose (C. C. A.) 61 F.(2d) 441.

The petition is denied.