## UNITED STATES v. KRUEGER et al.
### No. 7508.

Circuit Court of Appeals, Third Circuit.
June 30, 1941.

---

and Sewall Key and Ruppert Bingham, Sp. Assts. to the Atty. Gen., William F. Smith, Acting U. S. Atty., of Newark, N. J., and Thorn Lord, Asst. U. S. Atty., of Trenton, N. J., on the brief), for appellant.

Edward R. McGlynn, of Newark, N. J. (Albert Hubschman, of New York City, and Earl W. Shinn, of Washington, D. C., on the brief), for appellees.

Before BIGGS, CLARK, and GOODRICH, Circuit Judges.

CLARK, Circuit Judge.

The present controversy arose from the assessment of a tax deficiency against a corporation for the fiscal years ended March 31, 1919, 1920 and 1921. The assessments were made after the corporation dissolved on July 10, 1922, and after waivers had been signed by one of the directors who served as a dissolution trustee. The validity of these waivers are in question.

We are constrained to disagree with the learned district judge who heard this case. He appears to have followed the early notions of the Board of Tax Appeals.[1] Originally, the Board seemed to go out of its way to set aside what are called for short "tax waivers".[2] Its opinion showed, in our judgment, the lack of a sound analysis of the question, and it has been in every instance overruled by the appropriate Circuit Court of Appeal. In fairness to the Board, however, it should be said that it has bowed gracefully to controlling authority.[3] The cases are collected in 5 Paul and Mertens, Law of Federal Income Taxation § 50.61 Corporation, § 50.64 Corporations in the Process of Dissolution, and in the 1939 Supplement thereto.[4]

A "statute of repose" for tax claims is plainly wise. The taxpayer benefits by the act of grace[5] and the sovereign, of course, desires some limitation on its generous gift of the right to sue. A writer in the California Law Review confirms this thought.

Paul R. Russell, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen.,

---

[1] Loux, Board Decisions on Statute of Limitations, 10 Tax Magazine 12, 14–16; cf. Foulke, Waivers and the Federal Income Tax, 7 National Income Tax Magazine 469, 473.

[2] 5 Paul & Mertens, Law of Federal Income Taxation, § 50.38 Waivers, § 50.39 General, § 50.40 Historical Comment, and 1939 Supplement, pp. 2391, 2392.

[3] T. H. Symington & Son, Inc., v. Com'r, 35 B.T.A. 711; Newark Morning Ledger Co. v. Com'r, 39 B.T.A. 654.

[4] Cf. Corporations—Waiver of Statute of Limitations—Authority of Officer to Bind Corporation, 28 Michigan Law Review 618.

[5] Nullum tempus occurrit regi, 46 C.J. 833; 69 J.P. 386.

"The soundness of this established legislative policy is not open to serious question. The reasons justifying statutes of repose in other fields are fully applicable to federal tax liabilities. Indeed, the very large number of persons affected by the various federal revenue acts, the vital importance of such liabilities in the budgets of business enterprises, and the consequences to taxpayers which may result from failure to compute correctly under a highly complex law and discharge in full their federal tax obligations, combine to make a statute of repose in favor of honest taxpayers a matter of well-nigh imperative necessity. From the point of view of the government, the fiscal desirability and advantage of a reasonable period of limitation on claims and suits for refund of taxes illegally or erroneously collected is too obvious to require comment." Kent, Mitigation of the Statute of Limitations in Federal Tax Cases, 27 California Law Review 109.

Like any other right, it need not be taken advantage of and so may be waived. This is true whether the grant be that of a general statute of limitations or the special condition of a revenue act.[6] A waiver may proceed from the high motive of paying even the slothful creditor or it may proceed from the low motive of desiring more time to cut something off the due bill. When the creditor is the Government, the nature of the abstraction seems to preclude altruism. Because of that, perhaps, experience shows a consistent and concerted effort to have these waivers declared nugatory.[7] If the taxpayer is disappointed, he inclines to ask back the extra time he wanted in the hope of consolation.

■ Where the waiver is that of a corporation, the most obvious defense turns upon its inability to act except through human agents. When the corporation is not in esse but on its death-bed,

the matter becomes more complicated. It is governed by "local rules of property".[8] In New Jersey the directors of a corporation in process of dissolution become "trustees thereof"[9] and continue as such unless the Court of Chancery appoints receivers.[10] Their powers are broadly defined in the Act. The pertinent sentence reads:

"Upon the dissolution in any manner of any corporation, the directors shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts, as far as such moneys and property shall enable them." N.J.S.A. 14:13-5.

Liquidating directors are not trustees in the sense of the law of trusts. Professor Fletcher points this out.

"Although the statutes characterize the directors upon dissolution as trustees, they are not trustees of a trust in any true sense of the word. Nor are they officers of the court, but they are merely statutory liquidators. Nor are these statutory trustees receivers unless the statute clearly makes them so." 16 Fletcher, Cyclopedia Corporations § 8175 and authorities there cited.

There arises, then, no question of delegation of powers.[11]

■ There is no doubt that the power to waive the statute of limitations in pursuance of tax adjustment is included in the statutory power of the corporation "to settle the affairs" and to "divide the moneys [etc.] after paying its debts." The cases are unanimous in so holding.[12] As one Circuit Court of Appeals puts it:

" * * * The power given the trustees of a dissolved corporation to adjust and settle its affairs under the California statute are broad. Such powers, in so far as the payment of debts and adjustment of disputed matters affecting the assets are

---

[6] "The interruption of the statute or a revival of the claim is effectuated by a written or an oral promise not to plead the statute, unless coupled with a denial of the debt, or made after suit brought." 37 C.J. § 584, p. 1113.

[7] See 5 Paul & Mertens, Law of Federal Income Taxation § 50.40–50.68, and 1939 Supplement, pp. 2392 et seq.; Patten, Recent Developments in Statute of Limitations and Waiver Muddle, 5 National Income Tax Magazine 366 and 411; Tax Waivers and Their Interpretation by the Higher Courts, 2 George Washington Law Review 64 (note); cf. Foulke, The Statute of Limitations and Federal Income Tax, 3 Temple Law Review 143; Kent, Mitigation of the Statute of Limitations in Federal Tax Cases, 27 California Law Review 109, above cited.

[8] Paul, Selected Studies in Federal Taxation, Second Series, p. 16.

[9] N.J.S.A. 14:13-5.

[10] N.J.S.A. 14:13-7.

[11] 65 C.J. § 1056, p. 1102.

[12] 19 C.J.S., Corporations, § 1745, p. 1514.

concerned, are fully as comprehensive as the directors of a corporation would ordinarily exercise during the active life of the organization. Necessarily, there would be included the right in the trustees to use reasonable judgment and discretion in the handling of disputed claims or in the defense of suits, and within such discretion would seem to be the right to waive a statute of limitations." McPherson v. Commissioner of Internal Revenue, 9 Cir., 54 F.2d 751, 753.

The difficulty comes in the manner in which the power is carried out. The corporation of the principal case is a family one. Nearly all of the stock is owned by two families,[13] through their ownership of two realty companies.[14] The directors, both before and after the dissolution in 1922, are members by blood or marriage of those two families. Of the four surviving, only one[15] has been in any way active. He very naturally is the son of the founder and first president of the brewing company. He alone of the surviving trustees signed the income tax returns filed by the taxpayer for 1918, 1919, 1920, 1921 and 1922. He represented the corporation in a conference held in Washington in the attempt to settle the disputed deficiency assessments. He and the assistant secretary of the company signed the waivers and affixed the corporate seal thereto. On the other hand, all the trustee-directors voted for a resolution appointing a banker, who was an executor of one[16] of the estates concerned, an attorney in fact for the corporation in these tax matters. This banker attended the conferences in Washington already referred to. Furthermore, one of the trustees, along with William C. Krueger, signed the check made in payment of the taxes in controversy.

■■ The execution of the waivers is not the act of the trustees on dissolution. We think, however, that they are bound under settled principles of the law of agency. The liquidators both can and must act through others. The principles governing their agents should not differ from those applicable to the agents of the corporation itself.[17] To say otherwise, confuses the execution of a power with its extent.[18] Those winding up a corporation are limited in what they can do, but within those limitations, they can carry on business as usual. That business surely clothes the fiscal manager of a corporation with implied power to do everything reasonably necessary to reduce its liability. To bring about such reduction requires the time grantable only by the Government on waiver of limitations.[19] We do not need, therefore, to fall back upon apparent scope of authority,[20] or still less upon burden of proof,[21] the corporate seal as prima facie evidence of authorization,[22]

[13] Krueger and Hauck.

[14] Hauck Realty Company and Paramount Realty Company.

[15] William C. Krueger, vice-president.

[16] The Hauck estate.

[17] Hammond v. Carthage Sulphite Pulp & Paper Co., D.C., 34 F.2d 154, 156; Liberty Baking Co. v. Heiner, 3 Cir., 37 F.2d 703; Independent Ice & Cold Storage Co. v. Commissioner, 5 Cir., 50 F. 2d 31; Commissioner v. Angier Corp., 1 Cir., 50 F.2d 887; L. J. Christopher & Co. v. Commissioner, 60 App.D.C. 368, 55 F.2d 530; Concrete Engineering Co. v. Commissioner, 8 Cir., 58 F.2d 566, 567; Philip Carey Mfg. Co. v. Dean, 6 Cir., 58 F.2d 737; Belber Trunk & Bag Co. v. United States, 3 Cir., 70 F.2d 1005; Piedmont Wagon & Mfg. Co. v. United States, Ct.Cl., 6 F.Supp. 125, 129; Continental Oil Co. v. United States, Ct. Cl., 14 F.Supp. 533, 539; 5 Paul & Mertens, Law of Federal Income Taxation § 50.61 Corporations, and 1939 Supplement p. 2395.

[18] 16 Fletcher, Cyclopedia Corporations § 8179 Specific Powers; § 8181 Manner in Which Trustees Execute Their Powers, and 1941 Supplement pp. 343-345.

[19] United States v. Kemp, 5 Cir., 12 F.2d 7; Jaffee v. Commissioner, 2 Cir., 45 F.2d 679, 683; Lucas v. Hunt, 5 Cir., 45 F.2d 781; Commissioner v. Godfrey, 2 Cir., 50 F.2d 79; Monarch Mills v. Jones, 4 Cir., 59 F.2d 502, 503; Breene v. United States, Ct.Cl., 8 F.Supp. 730, 731; Bothwell v. United States, Ct.Cl., 18 F.Supp. 1011, 1014.

[20] Hammond v. Carthage Sulphite Pulp & Paper Co., D.C., 34 F.2d 154, 155, above cited; L. J. Christopher & Co. v. Commissioner, 60 App.D.C. 368, 55 F.2d 530; above cited; Piedmont Wagon & Mfg. Co. v. United States, Ct.Cl., 6 F. Supp. 125, above cited.

[21] Stern Bros. & Co. v. Commissioner, 8 Cir., 51 F.2d 1042; Crown Willamette Paper Co. v. Commissioner, 9 Cir., 81 F.2d 365.

[22] Jaffee v. Commissioner, 2 Cir., 45 F. 2d 679, above cited; Commissioner v. Angier Corp., 1 Cir., 50 F.2d 887, above cited; Wausaw Sulphate Fibre Co. v. Commissioner, 7 Cir., 61 F.2d 879; Warner Collieries Co. v. United States, 6 Cir., 63 F.2d 34.

and some far-fetched idea of estoppel[23] or presumption of acquiescence.[24]

 Because he held the waiver invalid, the learned trial judge did not pass upon the plaintiff's second count. In this count the plaintiffs asked for a reduction in their assessment in accordance with an amendment to the claim for refund filed August 11, 1932. The amendment asserted that the taxpayers were entitled to additional deductions for obsolescence of their tangible properties. But the taxes for which recovery by this amendment is sought were paid December 15, 1926. The period for filing claims expired, therefore, on December 15, 1930.[25] We rather gather from the briefs, the argument, and the record that the matter of this second count is not pressed with any great zeal. This, we think, is sound. Plainly, the repose of limitation is not to be disturbed by the evasion of an amended pleading.[26] It is true that the early strict rule has been modified to conform with the reason for the repose. So, amendments are not denied when the earlier pleadings have put the adverse party on notice of all pertinent facts.[27] The greater flexibility of administrative procedure may even further broaden the rule. It does not go to the extent, however, of permitting amendments except where there is some relation between the amendment and the original claim.[28] Only by the existence of such relation would the basis of the new claim have been disclosed in the investigation of the original claim.[29] Obsolescence of physical properties, the issue of the second count, and the validity of corporate waivers could hardly be at more distant poles.

The judgment of the district court is reversed.

[23] Lucas v. Commissioner, 5 Cir., 45 F. 2d 781, above cited; McPherson v. Commissioner, 9 Cir., 54 F.2d 751, above cited; Warner Collieries Co. v. United States, 6 Cir., 63 F.2d 34, above cited; Bryson v. Commissioner, 9 Cir., 79 F.2d 397; Breene v. United States, Ct.Cl., 8 F.Supp. 730, 731, above cited.

[24] United States v. Kemp, 5 Cir., 12 F. 2d 7, above cited.

[25] Revenue Act of 1926, § 284(b) (1), 26 U.S.C.A. Int.Rev.Acts, page 220.

[26] Union Pacific Ry. v. Wyler, 158 U. S. 285, 15 S.Ct. 877, 39 L.Ed. 983.

[27] New York C. & H. R. R. Co. v. Kinney, 260 U.S. 340, 43 S.Ct. 122, 67 L. Ed. 294; cf. Missouri, K. & T. Ry. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L. Ed. 355, Ann.Cas.1914B, 134; Harriss v. Tams, 258 N.Y. 229, 179 N.E. 476.

[28] United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405.

[29] Taxation—Collection and Enforcement—Amendment of Specific Tax Refund Claim After Expiration of Limitation Period, 51 Harvard Law Review 935, 936 (note).